IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DEVIN LEE MOELLENBERNDT,

Plaintiff,

vs.

MOHAMMED NESSAIEF, RODRIGUEZ
EMILIO, and SCOTT FRAKES, Director of
Department of Corrections;

Defendants.

4:22CV3178

MEMORANDUM AND ORDER

This matter is before the Court on initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) (requiring the court to dismiss actions filed in forma pauperis if they are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief).

## I. SUMMARY OF COMPLAINT

Plaintiff is an inmate in the custody of the Nebraska Department of Correctional Services (NDCS).  *See* Filing No. 1 at 1.  At the time of his Complaint, Plaintiff alleged that he was confined at the NDCS Diagnostic and Evaluation Center.  Filing No. 1 at 1. Publicly available records indicate that Plaintiff is presently confined at the Omaha Correctional Center.[1]  Plaintiff brings this action under 42 U.S.C. § 1983 alleging that NDCS employees violated his "5th Amendment right [and] used excessive force on an inmate."  Filing No. 1 at 5.  Plaintiff brings this action against NDCS employees

---

[1]    *See*    NDCS    Inmate    Search    available    at    https://dcs-inmatesearch.ne.gov/Corrections/InmateDisplayServlet?DcsId=215321&return=true  (last visited January 5, 2023); *see also Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court may take judicial notice of public records).

Mohammed Nessaief and Rodriguez Emilio, both identified as corporals with the NDCS. Filing No. 1 at 1, 8-9. Plaintiff also brings this action against Scott Frakes, director of the NDCS. Filing No. 1 at 1. Plaintiff does not allege whether the defendants are being sued in their individual or official capacities.

Plaintiff alleges that on November 9, 2020, at approximately 6:50 p.m., he asked Defendant Emilio why another group of prisoners was allowed to be "out" for longer than permitted. Filing No. 1 at 8, 10. Emilio replied that it was "none of [Plaintiff's] fucking business." Filing No. 1 at 8. Plaintiff then asked why Emilio was acting hostile and Emilio replied "[b]ecause I fucking can." Filing No. 1 at 8. Plaintiff then called Emilio a "little bitch" to which Emilio replied, "I be you won't repeat that once I open your door!" Filing No. 1 at 8. Emilio then opened Plaintiff's cell door and Plaintiff repeated the insult to Emilio. Filing No. 1 at 8.

Emilio pulled out his mace can and told Plaintiff he would be placed in holding. Filing No. 1 at 9. Emilio called for assistance to take Plaintiff to the holding cell and Defendant Nessaief arrived. Filing No. 1 at 9. Plaintiff put his hand behind his back and waited for Nessaief to ascend a staircase and place Plaintiff in handcuffs. Filing No. 1 at 9.

Plaintiff alleges Nessaief became aggressive while placing the handcuffs and, after the handcuffs were in place, Nessaief "C-clamped" Plaintiff's left arm and swung Plaintiff down the stairwell. Filing No. 1 at 9. Nessaief lost control of Plaintiff down the stairwell and Plaintiff had to catch himself on the railing while still handcuffed. Filing No. 1 at 9. After catching himself, Plaintiff resisted because Nessaief "physically threw [Plaintiff] down the whole stairwell." Filing No. 1 at 10.

2

After being placed in the holding cell, Plaintiff noticed bruising on his forearm, biceps, and triceps.  Filing No. 1 at 10.  Plaintiff alleges that he continues to have trouble closing and clenching or using his hand because of the tendons being severely bruised.  Filing No. 1 at 10.  Plaintiff alleges that a lieutenant took pictures of his injuries and that security cameras captured the entire incident.  Filing No. 1 at 10.  Defendant seeks damages for his injuries and an explanation as to why Defendant Nessaief is still working with the NDCS.  Filing No. 1 at 6.

## II.  STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d

968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION

Because Plaintiff does not specify the capacity in which the Defendants are sued, the Court must construe the Complaint as asserting claims against Defendants in their official capacities only which, in effect, are claims against the officers' employing entity, the NDCS.  In *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999), the Eighth Circuit explained:

> Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants.  Absent such an express statement, the suit is construed as being against the defendants in their official capacity.  A suit against a public employee in his or her official capacity is merely a suit against the public employer.

(Internal citations omitted)); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing

suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)). The Eighth Circuit strictly enforces the requirement that capacity be clearly pled to give notice to defendants sued in their individual capacity and because "[t]he Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees." *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *see also Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997).

Because the Court must construe the Complaint as against Defendants in their official capacity, Plaintiff's claims are barred by state sovereign immunity under the Eleventh Amendment. The Eleventh Amendment bars claims for damages against state employees in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). This is so because "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Graham*, 473 U.S. at 165). Because Plaintiff's claim is presumed to be against Defendants in their official capacities as employees of NDCS, it is barred by the Eleventh Amendment.

Even if Plaintiff had specified that Defendant Emilio and Frakes were being sued in their individual capacities, he makes no allegation that either of them personally violated his constitutional rights. To sustain a claim under §1983 against an individual for excessive force, a plaintiff must show the individual was personally involved in the alleged use of force. *Torres v. City of St. Louis*, 39 F.4th 494, 504 (8th Cir. 2022), *reh'g denied*, No. 21-1761, 2022 WL 3151858 (8th Cir. Aug. 8, 2022). Plaintiff makes no allegation that

either Frakes or Emilio personally used force against Plaintiff. Although Emilio and Plaintiff had a verbal altercation, there is no allegation that Emilio personally contributed to Plaintiff's injuries. Accordingly, Plaintiff fails to state a claim against Defendants Frakes and Emilio.

Plaintiff's Complaint alleges facts that may support a claim that Nessaief personally used excessive force against Plaintiff. Accordingly, the Court will give Plaintiff leave to file an amended complaint specifying whether Nessaief is being sued in his official or individual capacity. Plaintiff also failed to identify the NDCS facility where the alleged incident took place. In filing an amended complaint, Plaintiff is requested to identify this facility to facilitate service of summons.

Finally, the Court notes that while Plaintiff asserts his claims under the Fifth Amendment, his claim likely falls under the Eighth Amendment. "[T]he two primary sources of constitutional protection against physically abusive governmental conduct" are the Fourth and Eighth Amendments. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen, while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (internal marks and citations omitted). Based on the facts presently alleged, Plaintiff is serving his sentence and his claim must be analyzed under the Eighth Amendment.

In filing an amended complaint, Plaintiff should keep in mind that in an Eighth Amendment excessive-force case, "the core judicial inquiry is 'whether force was applied

6

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

The factors considered in evaluating whether officers acted in good faith when using physical force to restrain an inmate include:

1. The need for force;

2. The correlation between the need for force and the amount of force used;

3. The extent of the inmate's injury;

4. The threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them at the time; and

5. Any attempt by the officers to temper the severity of the response.

*Stenzel v. Ellis*, 916 F.2d 423, 427 (8th Cir. 1990). When a prisoner, having been warned several times, "refuses to comply with a legitimate jail security regulation, the incident has escalated into a 'disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff.'" *Stenzel*, 916 F.2d at 426 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1990)).  Should Plaintiff file an amended complaint, the Court must assess Plaintiff's claim under these principles.

## IV.  CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted and is subject to immediate dismissal under 28 U.S.C. § 1915(e)(2).  However, the Court on its

own motion will give Plaintiff 30 days in which to file an amended complaint.  If an amended complaint is not filed within 30 days, this action will be dismissed without further notice.

IT IS THEREFORE ORDERED:

1.      Plaintiff's claims against Defendants Rodriguez Emilio and Scott Frakes are dismissed without prejudice.

2.      Plaintiff shall have 30 days in which to file an amended complaint that states a claim upon which relief may be granted against Defendant Mohammed Nessaief. Failure to file an amended complaint within 30 days will result in the Court dismissing this case without prejudice, and without further notice to Plaintiff.  Plaintiff is encouraged to use the Court-approved form to draft his amended complaint, which the Clerk of the Court will provide to him.

3.      If Plaintiff files an amended complaint, he shall restate the allegations of the Complaint and any new allegations.  Failure to consolidate all claims into one document may result in the abandonment of claims.  Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.      In filing an amended complaint, Plaintiff shall specify in what capacity Defendant Mohammed Nessaief is sued and shall identify the facility where the alleged incident took place.

5.      The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files an amended complaint.

6.      The Clerk of the Court is directed to send to Plaintiff a form Complaint for Violation of Civil Rights (Prisoner).

8

7.     The Clerk of the Court is directed to set the following pro se case management deadline: **February 27, 2023**: amended complaint due.

Dated this 24th day of January, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge